**CHATFIELD v. WILMINGTON HOUSING FIN. & DEV., INC.**

[166 N.C. App. 703 (2004)]

Reversed and Remanded.

Judges GEER and THORNBURG concur.

---

KENT A. CHATFIELD AND CHRISTIANNA E. NOE, PLAINTIFFS v. WILMINGTON
HOUSING FINANCE AND DEVELOPMENT, INC., DEFENDANT

.    No. COA04-44

(Filed 2 November 2004)

### 1. Public Records— access to meetings and records of non-profit corporation—private corporation

The trial court did not err by granting summary judgment in favor of defendant nonprofit corporation on plaintiffs' action seeking to obtain access to meetings and records of defendant pursuant to the North Carolina public records law under N.C.G.S. § 132-1 et seq., because defendant is not subject to the public records law since: (1) neither our legislature nor our appellate courts have indicated that a corporate entity that has previously been subject to the public records law must remain subject to it; (2) there is no rule making the public records law applicable to an entity that was founded by governmental actors but has subsequently evolved into a private corporation; and (3) an entity's stated purpose of performing a function that is of use to the general public, without more, is insufficient to make the public records law applicable.    ·

### 2. Open Meetings— access to meetings and records of non-profit corporation—elected body—public good

The trial court did not err by granting summary judgment in favor of defendant nonprofit corporation on plaintiffs' action seeking to obtain access to meetings and records of defendant pursuant to the North Carolina open meetings law under N.C.G.S. § 143-318.9 et seq., because defendant is not subject to the open meetings law since: (1) defendant is not an elected body, and the record is devoid of any indication that defendant is currently an appointed body of the county, the city, or the housing authority; (2) even assuming without deciding that the factors from *News & Observer Pub. Co.*, 55 N.C. App. 1 (1981), are germane to determine whether an entity is a public body under the open meetings

law, they do not counsel in favor of concluding that the law applies to defendant as none of the nine factors are currently present in the instant case; and (3) there is no basis in law for the proposition that an entity is a public body subject to the open meetings law where, without more, it furthers the public good and was previously, but no longer is, an agent or instrumentality of a local government.

Appeal by plaintiffs from judgment entered 21 August 2003 by Judge Russell J. Lanier, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 15 September 2004.

*Legal Aid of North Carolina, Inc., by James J. Wall and Marco P. Locco, Jr., for plaintiffs.*

*Wessell & Raney, L.L.P., by John C. Wessell, III, for defendant.*

LEVINSON, Judge.

The present appeal arises from an action by plaintiffs (Kent A. Chatfield and Christianna E. Noe) to obtain access to meetings and records of defendant Wilmington Housing Finance and Development, Inc. (WHFD) pursuant to the North Carolina Open Meeting and Public Records Laws. Plaintiffs appeal from the entry of summary judgment in WHFD's favor. We affirm the ruling of the trial court.

On 17 June 1982, Wilmington Housing Authority Development (WHAD) was incorporated as a nonprofit corporation. The incorporator of WHAD was the long-term executive director of the City of Wilmington's Housing Authority (WHA). The stated purpose in WHAD's articles of incorporation was to augment, benefit, and enhance the function and purposes of the WHA in providing funds for the purchase, development, lease, and operation of low and moderate income housing. Pursuant to its articles of incorporation, WHAD's accounting practices and finances were subject to annual review by the board of the WHA, its net earnings inured to the benefit of the WHA, and its assets were to be transferred to the WHA upon dissolution. In addition, approval of the WHA was required for amendment of WHAD's articles of incorporation.

On 18 August 1987, the charter of WHAD was amended to include, *inter alia*, the following: The name of the company was changed from Wilmington Housing Authority Development, Inc., (WHAD) to Wilmington Housing Finance and Development, Inc. (WHFD). Any references to WHFD being an instrumentality of WHA

CHATFIELD v. WILMINGTON HOUSING FIN. & DEV., INC.

[166 N.C. App. 703 (2004)]

were deleted. The provision requiring approval of the WHA to amend the articles of incorporation was deleted, and a provision was added stating that only the approval of the board of WHFD was required for amendment of the articles. Provisions requiring net earnings to inure to the benefit of WHA and assets to be transferred to WHA upon dissolution were eliminated. The stated purpose of WHFD was expanded to include the performance of "such other functions as are authorized or are requested by [the WHA] by and through its Board of Commissioners and/or the City of Wilmington by and through its City Council."

Pursuant to the 1987 charter amendments, WHFD enacted new by-laws. These by-laws gave the City of Wilmington, New Hanover County, and the WHA the authority to each appoint two individuals to WHFD's board and required that the remaining three directors be appointed by WHFD's board. Since this amendment to the bylaws, several members of WHFD's board have been governmental officials of the County of New Hanover and the City of Wilmington. The 1987 by-laws also gave the WHA and the City the authority to review the activities and inspect the books and records of WHFD. At the time of the 1987 by-laws and amendments, WHFD's principal office was located in an office building belonging to the City of Wilmington. As recently as 1998, WHFD listed its principal office as being located in an office building belonging to the City.

In 1999, plaintiffs were hired by WHFD and Cape Fear Community College to participate in the renovation of a school. According to plaintiffs, they felt that something was "amiss" at the job site in that, *inter alia*, there were several people present at the job site who were being paid despite the fact that utilities were not in place for these people to begin work, cash was being paid out, and student-workers were being transferred to other WHFD and WHA projects. Plaintiffs wished to make a complaint about their observations to the WHFD board. Plaintiffs made several requests to attend a WHFD board meeting. All of these requests were denied. In addition, plaintiffs allegedly made several attempts to obtain records from WHFD and repeatedly experienced difficulty doing so.

In 2001, WHFD moved its principal office to a space it leased from a private company. By a March 2002 amendment to its bylaws, WHFD placed all authority to appoint new board members in its own board. On 13 August 2002, WHFD adopted restated articles of incorporation that eliminated the authority of the WHA and the City of Wilmington to inspect its books and records, eliminated the provi-

sions authorizing WHFD to perform functions authorized or requested by the WHA or the City, and eliminated the provisions subjecting the activities and finances of WHFD to annual review by the WHA and the City. As of July 2003, three of the nine positions of WHFD's board of directors were vacant, and the remaining six positions were filled by members appointed by WHFD's board. One member of WHFD's board was also a member of WHA's board of directors. None of the remaining members were employees of New Hanover County, the City of Wilmington, or the WHA.

The financial statements for the fiscal years ending in 2000, 2001, and 2002 do not report any funds given to WHFD by the WHA, New Hanover County, or the City of Wilmington. WHFD did receive $15,000 in revenue from the WHA in 2001 as payment for supervision fees related to the selling of houses by the WHA.

On 20 May 2002, Chatfield and Noe filed a complaint in superior court seeking, *inter alia*, a declaration that WHFD was subject to the North Carolina Open Meetings Law, contained in Chapter 143 of the General Statutes, and the Public Records Laws, contained in Chapter 132 of the General Statutes, and an injunction prohibiting alleged violations of these laws. On 16 July 2002, the superior court entered a preliminary injunction ordering WHFD to fully comply with the Open Meetings and Public Records laws and to allow Chatfield and Noe to attend meetings and obtain records. Subsequently, the plaintiffs and WHFD both moved for summary judgment. On 21 August 2003, the superior court entered a judgment and order granting defendant's motion for summary judgment and denying plaintiff's motion.

From the superior court's order and judgment, plaintiffs now appeal, contending that the trial court erred in denying its motion for summary judgment and entering summary judgment in WHFD's favor. WHFD also made a cross assignment of error, which it expressly withdrew during oral argument. As such, we will only address plaintiff's arguments on appeal.

---

The standard of review on appeal from a summary judgment ruling is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 393-94, 499 S.E.2d 772, 775 (1998). In the instant case, the facts are not disputed, and the only issues are whether as a matter of

law (1) WHFD is subject to the Open Meetings Law of North Carolina, N.C.G.S. § 143-318.9, *et seq.*, and (2) WHFD is subject to the Public Records Law of North Carolina, N.C.G.S. § 132-1, *et seq.*

[1] We first address plaintiffs' argument that WHFD is subject to the Public Records Law of North Carolina. We hold that, on the record presented in the instant case, WHFD is not subject to the North Carolina Public Records Law.

The North Carolina General Statutes contain the following mandate:

> The public records and public information compiled by the agencies of North Carolina government or its subdivisions are the property of the people. Therefore, it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law.

N.C.G.S. § 132-1(b) (2003). The term "public record" is statutorily defined to mean

> all documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions.

N.C.G.S. § 132-1(a) (2003). Under the statute, a governmental agency is defined to include "every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government." *Id.*

A corporate entity also may be considered an agency of local government for the purposes of our State's public records statute; however, "[t]he unavoidable fact is that each new arrangement must be examined anew and in its own context." *News & Observer Pub. Co. v. Wake County Hospital Sys., Inc.*, 55 N.C. App. 1, 11, 284 S.E.2d 542, 548 (1981), *disc. review denied*, 305 N.C. 302, 291 S.E.2d 151, *appeal dismissed, cert. denied*, 459 U.S. 803, 74 L. Ed. 2d 42 (1982) (hereinafter *News & Observer*). The nature of the relationship

CHATFIELD v. WILMINGTON HOUSING FIN. & DEV., INC.

[166 N.C. App. 703 (2004)]

between a corporate entity and the government is the dispositive factor in determining whether the corporate entity is governed by the Public Records Law. *Id.* In *News & Observer*, this Court held that the entity was subject to the Public Records Law based on the following nine factors:

> The . . . articles of incorporation provide (1) that upon its dissolution, the [corporation] would transfer its assets to the county; and (2) that all vacancies on the board of directors would be subject to the [County's] approval. The lease agreement provided (3) that the [corporation] occupy premises owned by the county under a lease for $1.00 a year; (4) that the [County] Commissioners review and approve the [corporation]'s annual budget; (5) that the county conduct a supervisory audit of the [corporation]'s books; and (6) that the [corporation] report its charges and rates to the county. The operating agreements also provide (7) that the [corporation] be financed by county bond orders; (8) that revenue collected pursuant to the bond orders be revenue of the county; and (9) that the [corporation] would not change its corporate existence nor amend its articles of incorporation without the [C]ounty's written consent.

*Id.* at 11-12, 284 S.E.2d at 548-49. In addition, the Court considered the fact that the entity involved was performing an important "public and governmental" function. *Id.*

In the instant case, WHFD concedes that, in the past, several of the factors enumerated by this Court in *News & Observer* counseled in favor of finding that it was subject to the Public Records Law. However, plaintiffs do not dispute that, as of August 2002, none of these nine factors was present. The present non-existence of these factors is attributable to structural changes made by WHFD, the lawfulness of which has not been questioned and is not at issue on this appeal. Notwithstanding the inapplicability of the *News & Observer* factors, plaintiffs contend that WHFD must be subject to the Public Records Law because WHFD "was founded by the [WHA] and the City of Wilmington as an agency of government, and its fundamental purpose has not changed since the time of its founding." We are unpersuaded by this argument.

Our Public Record Laws are only applicable to government agencies. Pursuant to this Court's decision in *News & Observer*, the government must exercise "supervisory responsibilities and control" over a corporate entity for such an entity to qualify as a government

agency and fall within the ambit of the Public Records Law. *Id.* Neither our Legislature nor our appellate courts have indicated that a corporate entity that has previously been subject to the Public Records Law must remain subject to it. Likewise, we are aware of no rule making the Public Records Law applicable to an entity that was founded by governmental actors but subsequently has evolved into a private corporation. Moreover, we conclude that an entity's stated purpose of performing a function that is of use to the general public, without more, is insufficient to make the Public Records Law applicable.[1]

This assignment of error is overruled.

---

[2] We next address plaintiff's argument that WHFD is subject to the North Carolina Open Meetings Law. We hold that, on the record presented in the instant case, WHFD is not subject to the Open Meetings Law.

The North Carolina General Statutes include the following policy statement:

Whereas the public bodies that administer the legislative, policy-making, quasi-judicial, administrative, and advisory functions of North Carolina and its political subdivisions exist solely to conduct the people's business, it is the public policy of North Carolina that the hearings, deliberations, and actions of these bodies be conducted openly.

N.C.G.S. § 143-318.9 (2003). Pursuant to this policy, the Legislature has provided that "[e]xcept as [otherwise] provided . . ., each official meeting of a public body shall be open to the public and any person is entitled to attend such a meeting." N.C.G.S. § 143-318.10(a) (2003). The term "public body" is defined to mean

any elected or appointed authority, board, commission, committee, council, or other body of the State, or of one or more counties, cities, school administrative units, constituent institutions of The University of North Carolina, or other political subdivisions or public corporations in the State that (i) is composed of two or more members and (ii) exercises or is authorized to exercise a

---

1. Indeed, if the Public Records Law was construed to be applicable whenever an organization's stated purpose was the performance of a socially helpful function, then the law might be applicable to virtually all charitable non-profit corporations. We discern no intent by the General Assembly to bring about this result.

legislative, policy-making, quasi-judicial, administrative, or advisory function.

N.C.G.S. § 143-318.10(b) (2003).

Significantly, the phrase "elected or appointed" was added to the definition of "public body" in 1994. *See* 1994 N.C. Sess. Laws ch. 570, § 1; *DTH Publ'g Corp. v. Univ. of N.C.*, 128 N.C. App. 534, 538, 496 S.E.2d 8, 11 (1998). This Court has held that for a body to be appointed within the meaning of the Open Meetings Law "the person or body doing the appointing must be one authorized to do so." *DTH Publ'g Corp.*, 128 N.C. App. at 539, 496 S.E.2d at 11.

In the instant case, WHFD is not an elected body, and the record is devoid of any indication that WHFD is currently an appointed body of New Hanover County, the City of Wilmington, or the WHA. Pursuant to its current bylaws, only WHFD's board may appoint new WHFD board members. As of August 2003, all non-vacant WHFD directorships had been filled by WHFD's board. Thus, WHFD does not qualify as a "public body" as the term is defined in the Open Meetings Law.

The parties argue that the nine *News & Observer* factors are relevant to determining whether an entity is a public body under the Open Meetings Law. However, even assuming without deciding that the *News & Observer* factors are germane, they do not counsel in favor of concluding that the Open Meetings Law applies to WHFD, as none of the nine factors are currently present in the instant case.

As in their argument with respect to the Public Records Law, plaintiffs insist that WHFD is a public body under the Open Meetings Law because it "was founded by the [WHA] and the City of Wilmington as an agency of government, and its fundamental purpose has not changed since the time of its founding." However, we find no basis in law for the proposition that an entity is a public body subject to the Open Meetings Law where, without more, it furthers the public good and was previously, but no longer is, an agent or instrumentality of a local government.

This assignment of error is overruled.

Affirmed.

Judges HUNTER and GEER concur.